**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

ELISA DAHER in her individual capacity and as successor-in-interest to JAIME NARANJO,

Plaintiff,

v.

COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S OFFICE, DEPUTY SHERIFF ANDREW SEIDEL, SERGEANT DAVID CUNEO, DEPUTY SHERIFF SARA DLUGOPOLSKI, DEPUTY SHERIFF PEDRO AVALOS, DEPUTY SHERIFF CARLOS RODRIGUEZ, DEPUTY SHERIFF MARCELINA MARTINEZ, DEPUTY SHERIFF AIMEE RIVERA, DEPUTY SHERIFF JOE DURAN, DEPUTY SHERIFF WILLIAM ROBINSON, DEPUTY SHERIFF ANDREW GONZALES, DEPUTY SHERIFF CHRISTOPHER PICANCO, DEPUTY SHERIFF JOHN LOPES, SERGEANT LOWERY, DETECTIVE ALEX ZAKRZEWSKI, DETECTIVE BRANDON WRIGHT, DETECTIVE RICHARD S. HAMILTON, DETECTIVE LINDSEY LAMB, SERGEANT CHRIS BRITTON,

Defendants.

Case No.: 2:24-cv-02611-DC-SCR

**[~~PROPOSED~~] ORDER RE: PLAINTIFF'S MOTION TO COMPEL, FOR SANCTIONS, AND FOR ORDER TO SHOW CAUSE**

Before the Court is Plaintiff's motion to compel discovery from Defendants Sacramento County Sheriff's Office ("SCSO") and Sacramento County (the "County") (collectively, "Defendants") for discovery-related sanctions, and for an Order to show cause (the "Motion"). (Dkt. 76; Joint Statement at Dkt. 78.) The Court, having considered the Motion, the related briefing, the oral argument of counsel[1] at the hearing, and the entire record herein, hereby **ORDERS:**[2]

1. Within seven (7) days of this Order, SCSO shall produce a spreadsheet of the January 1, 2017 – June 12, 2022 Mobile Crisis Support Team ("MCST") / Crisis Intervention Team ("CIT") dispatch data, in the same format and with the same categories of information as the spreadsheet of MCST/CIT dispatch data from June 13, 2022 through March 7, 2025 that SCSO previously produced as DEF 040810. To facilitate its compliance with this Order, SCSO shall designate an IT specialist or other adequately-qualified individual to create a replicated database of the archived January 1, 2017 – June 12, 2022 MCST/CIT dispatch data, which shall be searchable to the same degree as SCSO's database of non-archived MCST/CIT dispatch data.

2. Within seven (7) days of this Order, SCSO shall produce (A) all Blue Team Reports and associated incident reports and computer-aided dispatch ("CAD") reports pertaining to officer-involved shootings from January 1, 2017 to August 26, 2026, as well as (B) a sample of 200 additional Blue Team Reports and associated incident reports and CAD reports from the 1,276 reports SCSO represented are not jail based from the same period, so that Plaintiff can determine for herself which mental-health related CAD events from that period involved reported use of force. Defendants shall use a random sampling protocol for the 200 additional reports and shall disclose their sampling protocol to Plaintiff. Plaintiff may elect to require that the 200 additional

[1] Counsel for Defendants failed to appear at the hearing, believing the hearing would be held via Zoom. By minute order (Dkt. 89), the Court denied Defendants' request to reconvene the hearing counsel missed (Dkt. 84).

[2] At the hearing on September 24, the Court directed Plaintiff's counsel to submit a comprehensive proposed order concerning Plaintiff's Motion. That proposed order is filed at Dkt. 85. The Court relied on the Word version of the proposed order as the foundation for this Order, but made substantial changes to it.

reports involve unique events relative to the 94-event sample previously produced (Dkt. 67). The Court declines to order the production of all 1,276 non-jail reports because (1) the reports concerning officer-involved-shootings will likely be the most relevant reports, (2) a sample of 200 reports is likely sufficient to allow Plaintiff to prove any other relevant evidentiary issues concerning this information set, (3) review and production of all 1,276 non-jail reports would involve a self-evident burden, and (4) that burden is likely disproportionate in relation to the value of the production of all non-jail reports, many of which will be marginally relevant, if at all relevant.

The Court reiterates its prior determination that "responsive CAD logs are relevant, at a minimum, to Plaintiff's Monell claims[.]" (Dkt. 52 at 8.) Defendants' objection to discovery concerning MCST as "irrelevant" (Dkt. 78 at 5-6), is accordingly overruled. In particular, even if prior cases have not addressed whether there are circumstances in which the U.S. Constitution or disability laws require law enforcement officers to be accompanied by mental health professionals, that is hardly sufficient to show that discovery concerning MCST is irrelevant. It may be that such a theory of liability has never been squarely presented to a court. Or that a plaintiff's counsel has never been so persistent in seeking to build a record that might support such a theory. Moreover, to preclude discovery as to MCST practices would require the Court to effectively find that Plaintiff cannot state a claim on this theory, despite Defendants failing to cite any authority in the joint statement to support this objection and failing to file a motion to dismiss.[3] Defendants can seek to argue this point further on a summary judgment motion, on a full record. *See Sonos, Inc. v. Google LLC*, 2026 WL 2458650, *2 (C.D. Cal. July 21, 2026) ("Sonos's argument is a merits defense

---

[3] The Court recognizes that Defendants' request for rehearing cited the Ninth Circuit's statement that, "we do not have 'two tracks of excessive force analysis, one for the mentally ill and one for serious criminals[.]'" Dkt. 84 (quoting *Napouk v. Las Vegas Metropolitan Police Department*, 123 F.4th 906, 920 (9th Cir. 2024)). However, there is nothing in *Napouk* to suggest that the plaintiff in that case sought to establish liability based on the absence of mental health professionals during the law enforcement encounter. The Court need not entertain "two tracks of excessive force analysis," to recognize that the "totality of the circumstances" may properly include the presence or absence of mental health professionals. *See Napouk*, 123 F.3d at 920 (recognizing that precedent requires evaluation of the "totality of the circumstances" in determining whether a use of force was excessive).

presented as a discovery objection."). The undersigned thus finds this ordered production to be reasonable and necessary. Based on the sample production, the Parties may meet and confer to discuss the need for any additional and/or alternative identification or sampling protocols from within the universe of 1,276 non-jail reports.

3. Within fourteen (14) days of this Order, SCSO and the County shall produce a competent privilege log that complies with Federal Rule of Civil Procedure 26(5)(A). SCSO's September 9, 2026 privilege log contains 844 entries, all email correspondence. The log asserts the same bases for withholding each logged document: "Attorney-client privilege/work product. The information withheld involves confidential correspondence regarding an investigation." (Dkt. 78-10). SCSO's log is insufficient under Rule 26. For any communications withheld on the basis of attorney-client privilege, SCSO must provide information sufficient to allow Plaintiff to assess SCSO's privilege assertion and the Court to resolve any challenges to any assertion, including, as to work product, whether Plaintiff's claimed substantial need for a given withheld document or communication outweighs an asserted privilege. To do so, SCSO must, at a minimum: (1) identify, by name and role, the attorney(s) involved in the communication; (2) describe each communication with sufficient detail to determine whether the communication sought or conveyed legal advice and on what specific topic (it is insufficient to simply state that a given communication related to "an investigation" or the like); (3) provide sufficient information to determine whether the attorney(s) were actively participating in the logged communication or merely reading in copy. For any communications withheld on the basis of the work-product doctrine, SCSO must describe the nature of the communication with sufficient detail to permit the undersigned to determine if the protection applies.

Further, the undersigned notes that although SCSO informed Plaintiff that it had categorized upwards of 5,332 documents as privileged, its September 9, 2026 privilege log only accounts for 844 documents. SCSO shall include the remaining approximately 4,488 documents in its revised privilege log. SCSO shall log each communication, and each attachment to each such communication as a unique entry.

The County has not produced any privilege log to date. The Court understands from a transcription of a meet and confer call between the parties that Defendant Sacramento County has either refused to collect or else withhold wholesale all communications and materials set to, from, or between members of the County's Board of Supervisors. That is improper, as is any assertion by defense counsel that the County need not and will not serve a privilege log to attempt to justify its privilege assertions. The Court cautions the County that the deliberative process privilege is a qualified privilege, not an absolute privilege as claimed. Defendants shall immediately collect all potentially responsive communications and files from the Board of Supervisors; produce within seven days of this Order all responsive materials that are not subject to attorney-client, deliberative process, or other appropriate privilege; and provide within seven days of this Order a privilege log along the lines prescribed above to substantiate any privilege assertions.

4. Within fourteen (14) days of this Order, the County shall serve Plaintiff with amended responses to Plaintiff's Requests for Production of Documents ("RFPs") 1-7, 8, 11, 12, 18, and 20. (*See* Tilley Decl., Ex 1.)

Defendant shall also, within fourteen days of this Order, make supplemental productions as set forth below. The County shall immediately conduct a reasonable and diligent search of all physical and electronic sources within their possession, custody, and control (including all archives or other storage volumes) in which responsive materials may reasonably be expected to be found. As part of this effort, the County must contact each of the County employees and departments identified by the County's Rule 30(b)(6) designee, Ms. Jennifer Reiman, to have information responsive to these RFPs, and request their engagement in the County's search for responsive documents. For clarity, neither County nor SCSO nor any other Defendant may simply rely on non-attorney employees to conduct this search or any other. Rather, Defendants' outside counsel must actively participate in and supervise the process. Defense counsel is reminded to observe and adhere to the full scope of Plaintiff's RFPs and to respect Defendants' obligations to respond fully and fairly to the same (including in compliance with this and prior Court Orders).

At minimum, Defendants' obligations under this Order include, but are not limited to:

- Seeking from **Kelly Weaver** all responsive records in her custody, possession, or control, including but not limited to: documents, data, and communications from 2013 to 2015 concerning the initiation of the MCST program, its mission and goals, and SCSO's participation in the program; all data evaluated to determine MCST's hours of operation; all documents, data, and communications relating to any proposal to expand MCST's hours of operation; all documents, data, and communications relating to budget proposals presented to the Board of Supervisors, all documents, data, and communications relating to funding requests, budget proposals, and performance reports shared with the Mental Health Service Act Steering Committee; all documents, data, and communications relating to the County's internal evaluations of the MCST and its successor, the Co-Response Crisis Intervention Team ("CCIT") program; all records and communications relating to SCSO's discontinuation of the MCST/CCIT program and the current status of SCSO's participation or potential participation in the program; and all responsive records relating to the Community Wellness Response Team ("CWRT"). (*See* Dkt. 79-4 at 45:11-16, 46:5-18, 48:8-11; 60:1-8; 63:20-64:11; 83:14-25; 93:1-24; 204:6-24.)
- Seeking from **Stephanie Kelly** all responsive records in her custody, possession, or control, including but not limited to: all responsive records relating to the CWRT; all documents, data, and communications relating to the County's internal evaluations of the MCST/CCIT program; and all records and communications relating to SCSO's discontinuation of the MCST/CCIT program and the current. (*See id.* at 123:3-124:1; 206:06-13; 259:10-24.)
- Seeking from **Christina Erizari** all responsive records in her custody, possession, or control, including but not limited to: all responsive records relating to the CWRT; all documents, data, and communications relating to the County's internal evaluations of the MCST/CCIT program. (*See id.* at 123:3-124:1; 206:06-13.)

- Seeking from **Carlani Rocha** all responsive records in her custody, possession, or control, including but not limited to: all responsive records relating to the CWRT. (*See* id. at 20:04-21:08.)
- Seeking from the **Department of Behavioral Health Services "Budget Team"** all responsive records in its custody, possession, or control, including but not limited to: all documents, data, and communications relating to funding requests, budget proposals, grant applications, and grant awards for the MCST, CCIT, and CWRT programs; all documents relating to actual budgets and expenditures for the MCST, CCIT, and CWRT programs. (*See id.* at 196:02-201:11.)
- Seeking from the **Department of Behavioral Health Services "Continuous Quality Improvement ("CQI") Team"** all responsive records in its custody, possession, or control, including but not limited to: all reports and underlying data compiled for the purpose of evaluating the effectiveness, utilization, outcomes, and/or deficiencies of the MCST, CCIT, and CWRT. (*See* Tilley Decl., Ex. 2 at 37:3-38:12; 106:2-24.)
- Seeking from the **Department of Behavioral Health Services "planner(s)"** all responsive records in their custody, possession, or control, including but not limited to: all documents and communications relating to the Mental Health Steering Committee's review of the MCST, including reports prepared for the Steering Committee and all underlying data; and all grant applications, and grant awards for the MCST, CCIT, and CWRT programs. (*See* Dkt. 79-4 at 77:11-82:25; 201:3-11.)

To comply with this Order as it relates to RFPs 8, 11, 12, and 18, the County shall immediately conduct a reasonable and diligent search of all physical and electronic sources within their possession, custody, and control (including all archives or other storage volumes) in which responsive materials may reasonably be expected to be found.

At minimum, the County's obligations under this Order include, but are not limited to:

- Seeking from the Sacramento County District Attorney's Office all documents and communications relating to its investigations of SCSO officer-involved shootings

from January 1, 2017 to the present, including its investigation of Mr. Naranjo's shooting death.

- Seeking from the Sacramento County Office of the Inspector General all documents and communications relating to its investigations of SCSO officer-involved shootings from January 1, 2017 to the present, including its investigation of Mr. Naranjo's shooting death.
- Seeking from the Sacramento County Board of Supervisors ("BOS") all finalized reports, studies, audits, or assessments requested, commissioned, or considered by the BOS concerning SCSO officer-involved shooting incidents from January 1, 2017 to the present, including Mr. Naranjo's shooting death; all final agendas, minutes, and meeting materials from BOS open session meetings concerning SCSO officer-involved shooting incidents from January 1, 2017 to the present, including Mr. Naranjo's shooting death.

To comply with this Order as it relates to RFP 20, the County shall produce all records concerning or reflecting the County liability insurance and/or risk-retention or risk-pool coverage, protection, or assets which may cover part or all damages sought in this action.

To the extent any responsive documents have been lost, altered, deleted, overwritten, or otherwise rendered unavailable for production in the form they are maintained in the ordinary course of Defendants' operations, Defendants shall promptly identify all such records or, if that is not possible, categories or records and, for each, (a) identify the record, including by proving file name, dates of creation and/or modification, and all authors and recipients thereof; (b) identify the date on which such record was lost, altered, or otherwise rendered unavailable for production; (c) identify the substance and subject matter of the record; (d) explain how such record was lost, altered, etc.; (e) explain all measures made to preserve such record, i.e., what litigation hold or preservation efforts were made; and (f) detail all efforts made to recover the record.

5. Within fourteen (14) days of this order, Defendants shall file a written brief to SHOW CAUSE why Defendant SCSO should not be sanctioned and/or held in contempt of Court for its misrepresentations about the availability of MCST/CIT dispatch data predating June 13,

2022 and its failure to meet Court-Ordered deadlines to produce this data.[4] Plaintiff may respond to Defendants' brief under this Order to Show Cause within seven days of service of Defendants' brief.

6. Defendants SCSO and the County shall pay Plaintiff's reasonable fees and costs incurred in submitting, briefing, and arguing this Motion. Fed. R. Civ. P. 37(a)(5)(A). The Declaration of Douglas S. Tilley describes in general terms the work performed and conservatively estimates the fees incurred to be in excess of $30,000. The parties shall meet and confer as to the amount to be paid. If the parties agree on an amount, they may file a stipulation and proposed order requiring the payment of that amount. If the parties do not agree on an amount, Plaintiff shall submit a brief of no more than five pages in support of its fees request and supporting billing records. Defendants may submit a responsive brief within seven days of the filing of Plaintiff's brief.

**IT IS SO ORDERED.**

Dated: September 28, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

---

[4] The undersigned notes that SCSO appears to have violated several Court-ordered deadlines for producing the MCST/CIT dispatch data ("CAD data") and made misrepresentations about the data's availability. The undersigned first ordered SCSO to produce the CAD data by May 4, 2026, in granting Plaintiff's first motion to compel SCSO's response to RFP 19. (*See* Dkt. 52 at 8.) At that time of that Order, the deadline for completion of all fact discovery was May 26, 2026. (*See* Dkt. 46 at 4.) SCSO apparently did not meet this deadline. Plaintiff moved to modify the discovery deadline on May 22, in light of Plaintiff's contentions about deficiencies in SCSO's discovery responses, including the lack of requested CAD data. (*See* Dkt. 54.) Judge Coggins granted Plaintiff's motion, extending the fact discovery deadline to July 24, 2026. (*See* Dkt. 55.) SCSO did not produce any of the Court-Ordered CAD data or otherwise meet and confer with Plaintiff on this issue until June 12, 2026—and only after the Parties' June 8 status conference where the undersigned again ordered SCSO to produce the CAD data. (*See* Dkt. 61; Dkt. 62 at 3). SCSO represented to both Plaintiff and the undersigned that it was incapable of producing MCST/CIT dispatch data from January 1, 2017 to June 12, 2022, as that data had been deleted, destroyed, or lost. (*See* Dkt. 64) ("Such spreadsheet may exclude MCST data if such data is unavailable in searchable format, as represented by Defendants' counsel."). On August 27, SCSO disclosed for the first time that the data was not deleted, destroyed, or lost but archived, and could be readily restored to searchable format. (*See* Dkt. 78 at 6-7.) SCSO has not taken steps to restore the data to searchable format. (*See id.* at 8.) The discovery deadline has been extended, yet again, from July 24 to October 2, 2026. (*See* Dkt. 71.) Despite the October 2 deadline, SCSO has apparently not taken any steps to produce the missing CAD data. (Dkt. 78 at 8.)