UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISA DAHER,<br>Plaintiff,<br>v.<br>COUNTY OF SACRAMENTO, et al.,<br>Defendants. | No. 2:24-cv-02611-DC-SCR<br><br><u>ORDER RE: DISCOVERY MATTERS</u> |

## I. Introduction

On November 19, 2026, the Court held a hearing on the status of ongoing discovery disputes. The hearing was originally set to cover only privilege-related issues. ECF No. 104. However, because the parties continued to meet and confer on other disputes, and for the sake of efficiency, the Court allowed the parties to submit a joint statement on all remaining disputes and agreed to consider all disputes at the hearing. ECF No. 109. Many of the disputed issues were substantively resolved on the eve of the hearing, as indicated in the joint statement, ECF No. 110 (the "Joint Statement"), and thus the hearing primarily focused on timelines for Defendants to either complete production or to meet certain benchmarks. In this order, the Court memorializes the directives it made at the November 19 hearing, and issues a further procedural order on the disputed CAD Records/Blue Team Reports.

## II. Memorializing Orders as to Most Issues

The parties shall comply with the following timelines set at the hearing or otherwise set here, corresponding with identified sections in the Joint Statement:

- Section II.A
  - Defendants agreed to identify by bates number documents not previously produced, to serve a cross-reference identifying every document previously withheld as privileged that has since been produced, and to supplement the entry for REL00350395 (ECF No. 110 at 5:17-20) by November 20, 2026. To the extent Defendants did not already do so, they shall do so immediately.
  - Defendants shall promptly supplement their privilege log(s), including any privilege log relevant to deliberative process privilege as to productions related to the Board of Supervisors. Any failure by Defendants to promptly supplement a privilege log may be addressed through a request for an informal telephonic discovery conference.
- Section II.B: The Court orders Defendants to produce the (1) "Medical Information/PII" documents (241 documents) and the (2) "juvenile case files" (23 documents) on or before December 4, 2026. Defendants may redact the names and other PII in both classes of documents. Should Plaintiff have a reason to seek access to the redacted names or other PII, the parties shall meet and confer.
- Section II.C:
  - Defendants agreed to "(a) report the volume removed by Plaintiff's non-responsive categories by November 19, 2026; and (b) complete the review (following further meet and confer if the data set is still too large for Plaintiff) and produce responsive documents on a rolling basis, concluding by December 4, 2026." ECF No. 110 at 10:6-9. The Court orders Defendants to comply with these timelines.
  - Defendants shall also describe in writing the search methodology used for

each non-cloud source and outside counsel's role in implementing each non-cloud search on or before December 1, 2026. Outside counsel need not disclose specific communications, but must describe with particularity specific steps taken to ensure that Defendants' employees and custodians adequately searched for potentially responsive information.

- Section II.D/Section II.F:
  - Defendants shall disclose hit counts for the "third search" (ECF No. 110) at 11:20-22) on or before December 18, 2026.
  - Consistent with the Court's previous order (ECF No. 91 ¶¶ 3-4), on or before December 18, 2026, Defendants shall search, for the relevant period of January 1, 2017 to the present, the physical and electronic sources used by members of the Board of Supervisors—including computers and smartphones—within Defendants' possession, custody, and control for all potentially responsive communications and files from the Board of Supervisors.[1]
- Section II.E: Defendants shall disclose hit counts for the "OIS" and "officer-involved shooting" terms, which shall include root expanders as to each term and "SCSO" as discussed at the hearing, on or before December 1, 2026.

## III. CAD Records and Blue Team Reports for Mental-Health Dispatches

Due to time constraints at the hearing, the Court was unable to meaningfully address the parties' disputes about CAD records and Blue Team Reports ("BTRs"). This dispute has its own relatively long procedural history, which the Court first summarizes below.

### A. Procedural History of the CAD Records and BTR Dispute

On March 13, 2026, Plaintiff filed a motion to compel responses to requests for

[1] At the hearing, the parties discussed what to do with regard to past Board members. Defendants need not seek out past Board members and ask them to perform searches of their devices. Those past Board members are not parties to this action. However, if Defendants have possession, custody, and control of devices used by past Board members during the relevant period, Defendants must search those devices.

production ("RFPs"). ECF No. 49. Among those RFPs was No. 19, which sought documents concerning "calls for service and/or incidents during the Relevant Period in which SCSO consulted and/or deployed a Crisis Intervention Team or mental health professional, including all records related to such consultation or deployment." The parties submitted their joint statement concerning this dispute on April 9, 2026, and the Court heard the motion on April 23, 2026. One of the issues raised by that motion was a chart showing more than 28,000 relevant computer-aided dispatch (CAD) reports from 2017 to 2022. ECF No. 52 at 8. On April 27, 2026, the Court directed Defendant to designate within seven days, "a staff member to become proficient in running searches on the CAD system, at least to the same degree as the analyst who prepared the chart." *Id.* The Court further directed the parties to "meet and confer about the viability of using Plaintiff's proposed 'category' and 'flag' search terms to narrow the number of potentially responsive documents." Finally, the Court suggested that Plaintiff "consider narrowing the relevant period" and that the parties "consider a sampling protocol in lieu of other methods to identify responsive documents." *Id.*

On May 22, 2026, Plaintiff moved to modify the discovery deadline. ECF No. 54. Therein, Plaintiff claimed that Defendant "did not yet have proposed search criteria for the CAD reports[.]" ECF No. 54 at 5. Defendant filed an opposition to correct Plaintiff's "incomplete and misleading" statements about the status of discovery. ECF No. 56 at 2. Judge Coggins granted the motion to the extent it sought an extension, but referred the issue of intermediate discovery deadlines to the undersigned. ECF No. 55.

The Court set a hearing for June 8, 2026. In advance of the hearing, Plaintiff filed a status report which stated that Defendant had designated a staff member for CAD searches, but that Defendant had "refused to provide any information about its search methodology[.]" ECF No. 59 at 4. At the hearing, the parties were told to further meet and confer on the CAD issue, and Defendants were to arrange a meeting between its staff member proficient in running CAD searches and Plaintiff's counsel by June 15, 2026. ECF No. 61.

On June 16, 2026, Plaintiff filed another status report. ECF No. 62. The report stated counsel had met with Ms. Ackerman (the person designated to run the CAD searches) and had

learned additional information about the search methodology and capability. ECF No. 62 at 4. A further hearing was held with the Court on June 17, 2026, and the Court issued an order which required, in part: "Defendants shall report to Plaintiff by June 19, 2026 as to whether and in what manner 'blue team reports' are searchable. Based on that information, the parties shall further meet and confer on potential ways to narrow the scope of these Topics and the documents pertaining to such Topics." ECF No. 64.

On July 1, 2026, Plaintiff filed a further status report (ECF No. 66). Plaintiff reported that defense counsel had informed that BTRs are not searchable, but if the incidents are referred to internal affairs, then they are in an IA Pro database. ECF No. 66 at 6. The IA Pro database reportedly contained 114 such reports. *Id.* The Internal Affairs reports are only kept for 5 years, so they were available from 2020 to present. *Id.* As to CAD reports, Plaintiff stated it has provided Defendants a sample list of 94 CAD events on June 30, but had not yet received the reports themselves. *Id.* at 4.

The Court held a hearing on July 2, 2026, and directed: "Of the initial group of 94 CAD reports, the court ordered Defendants to produce at least 25 CAD and associated reports each day, beginning on 7/6/2026, until production is complete." ECF No. 67.

Plaintiff's next status report was filed August 5, 2026. ECF No. 74. The report noted that Defendants had produced the 94 CAD logs and incident reports on July 7, 2026. ECF No. 74 at 4. Plaintiff was dissatisfied with this production, arguing that "limiting RFP 19 based on any subset of the identified data categories provided by SCSO's analyst would undoubtedly omit relevant CAD records and incident reports." ECF No. 74 at 4. Plaintiff requested "hit counts for CAD events that resulted in Blue Team/Use of Force reports" and a follow-up meeting with Ms. Ackerman. *Id.*

The Court held another hearing on August 6, 2026, and set a one-week timeline for the parties to further meet and confer on the CAD/BTR issue and for Plaintiff's counsel to meet with the SCSO analyst to discuss CAD/BTR search terms. ECF No. 75. While there is no transcript of that hearing, the Court has reviewed the audio recording of the hearing and notes that Plaintiff's counsel explained at some length why Plaintiff's review of the initial 94 CAD records

(which included 71 related incident reports) demonstrated the appropriateness of a broader production of targeted CAD/BTR records.

On September 3, 2026, Plaintiff filed a motion to compel. ECF No. 76 & 78. The motion states Plaintiff learned on August 25 from Defendant SCSO that there are “1,276 non-jail Blue Team reports[.]” ECF 76 at 5. Plaintiff contended the Court had orally ordered “SCSO to disclose by August 14 the hit counts for CAD reports/log entries with an MH/MI flag from 2017-2026 that have associated Blue Team reports.” *Id*. at 7. Counsel for Defendant filed a declaration and attached correspondence concerning the BTRs. ECF No. 77 & Ex.M.

In the joint statement concerning that motion to compel, filed on September 10, 2026, Plaintiff argued that Defendants should produce all 1,276 non-jail BTRs. ECF No. 78 at 5, 11. Defendants stated this was “a further example of defense counsel providing information to Plaintiff’s counsel and asking for reasonable limitations to no avail.” *Id*. at 12. Defendants stated they had proposed producing all the reports concerning officer-involved shootings (“OIS”), but that Plaintiff rejected that proposal. *Id*.

Defense counsel failed to appear at the hearing on the motion to compel, held on September 24, 2026.[2] The Court issued an order following the hearing which required Defendants to produce all BTRs involving OIS data and a sample of 200 additional BTRs from the universe of 1,276 BTRs. ECF No. 91 at 2. Defendants were instructed to use a random sampling protocol for the 200 BTRs and disclose the protocol to Plaintiff. *Id*. The Court further found that “review and production of all 1,276 non-jail reports would involve a self-evident burden” which is “likely disproportionate in relation” to the relevance of all of the non-jail reports. *Id*. at 3.

The Court also set a status hearing, at the parties’ request, concerning the implementation of the September 29, 2026 order. In advance of that hearing, the parties filed a joint status report in which Plaintiff complained about Defendants’ production. ECF No. 101 at 13. Plaintiff argued that Defendants said there were 56 OIS reports, but only 53 were produced. *Id*.

---

[2] Defense counsel mistakenly calendared the hearing as a Zoom hearing rather than in-person. ECF No. 84.

Additionally, Defendants produced a sample of 200, but it did not have reports from 2017 to 2019 and accidentally included thirteen custodial reports. *Id*. Defendants represented that 264 reports were timely produced pursuant to the Order at ECF No. 91. *Id*. at 14. Defendants also disclosed the sampling methodology, including that it used "Excel's randomization feature." *Id*.

At the status hearing on November 5, 2026, the Court and the parties discussed the CAD/BTR issue. The Court attempted to confirm whether Plaintiff in fact had received more than 250 BTRs. Plaintiff's counsel would not confirm this fact, and suggested that the only OIS reports Plaintiff had received pertained to individual defendants (a point Defendants' counsel contested). The Court noted, "it seems like the plaintiff already has a lot of information in terms of the [BTRs] and the CAD reports and defendants have been raising burden and scope objections the whole way through. I think at some point those become meritorious if you're, you know, trying to get more and more and more." ECF No. 106 at 12-13. Plaintiff's counsel responded that there may be "tens of thousands" of mental health reports, noting that Plaintiff only has hundreds, and that Plaintiff wants more reports from prior to Mr. Naranjo's shooting. *Id*. at 13-14. The Court then told the parties they could meet and confer further on pre-2022 reports, *id*. at 14, and stated, in response to continuing argument from Plaintiff's counsel, "I've already ruled on what I think the appropriate scope of production is on this, so if you're asking me to sort of reconsider this on the fly, that's denied." *Id.* at 15-16.

Plaintiff again addressed CAD records/BTRs in the joint statement filed on November 18, 2026. Plaintiff noted that on November 10, Plaintiff renewed the following proposal, which they had first made in July 2026: that Defendant "(a) provide a list of all [BTR] incident numbers (not the reports themselves) and (b) produce all non-custodial BTRs and associated CAD and incident reports for those calls that (i) Defendants themselves identified as mental health-related and (ii) resulted in police use of force." ECF No. 110 at 15-16. Defendant SCSO represented in the joint statement that it is evaluating whether a list of the BTR incident numbers can be run without reviewing each individual BTR. However, at the hearing on November 19, the Court understood Plaintiff to be seeking potentially tens of thousands of CAD/BTR records. At the hearing, Defendants' counsel stated that BTR incident numbers could not be easily retrieved.

**B. Next Steps as to CAD Records/BTRs**

From the current record, it is not clear to the Court whether production of additional CAD records/BTRs is warranted. As an intermediate step, the Court orders the parties to further meet and confer on this issue on or before December 4, 2026, at which point Defendants' counsel must be able to explain to Plaintiff's counsel whether Defendant SCSO can provide a list of all BTR incident numbers without manually reviewing each BTR and, if not, to explain the information platforms used to store and access BTRs.

Following this meet and confer process, if Plaintiff believes that a further production of CAD records/BTRs should be compelled, the parties shall meet and confer on a timeline for the filing of a further motion to compel and the presentation of a joint statement on such motion.[3] The parties may agree to an accelerated timeline or Plaintiff may seek such a timeline through the filing of an administrative motion in conjunction with the further motion to compel. The Court may set a hearing on any further motion or take the matter under submission after the filing of the joint statement.

**SO ORDERED**

Date: November 24, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

[3] The Court recognizes that any such motion may be filed beyond the current deadline for the conclusion of fact discovery. Leave is granted to file such an untimely motion due to Plaintiff's diligence in seeking CAD/BTR information. The Court does not grant leave for any party to file any other untimely discovery motion.